639 15 1 126
SH

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
03/16/2007
Log Number 512049676

**TO:**   Kim Turner
Allstate Insurance Company - Nashville MCO
555 Marriott Drive, Suite 850
Nashville, TN, 37214

**RE:**   **Process Served in Tennessee**

**FOR:**   ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Larry Markowski and Valerie Markowski, Pltfs. vs. Allstate Property and Casualty Insurance, Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Attachments, Interrogatories and Request |
| **COURT/AGENCY:** | Monroe County Circuit Court, TN<br>Case # V07073H |
| **NATURE OF ACTION:** | Insurance Litigation - Policy benefits claimed for denial of fire insurance benefits |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 03/16/2007 postmarked on 03/13/2007 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the date of service - File answer |
| **ATTORNEY(S) / SENDER(S):** | Jay E. Kohlbusch<br>234 South Peters Road<br>Building A<br>Suite 101<br>Knoxville, TN, 37923<br>865-862-0284 |
| **REMARKS:** | Process served/received by the Insurance Commissioner on 03/08/2007, and mailed to CT Corporation System on 03/16/2007. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight, 790204114317 |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>800 S. Gay Street<br>Suite 0221<br>Knoxville, TN, 37929-9710 |
| **TELEPHONE:** | 865-342-3522 |



ReceiveD
MAR 19 2007
NASHVILLE MCO

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail
confirm receipt of the package only, not of its content.

**EXHIBIT**
A

Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 1 of 51   PageID #: PageID



STATE OF TENNESSEE
**DEPARTMENT OF COMMERCE AND INSURANCE**
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

March 13, 2007

Allstate Property & Casualty Ins Co % C T Corp.
800 South Gay Street, Ste 2021
Knoxville, TN  37929-9710
NAIC # 17230

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2150 0004 6618 7483
Cashier # 2208

Re: Larry & Valerie Markowski  V.  Allstate Property & Casualty Ins Co % C T Corp.

    Docket # V07073H

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint was served on me on March 08, 2007 by Larry & Valerie Markowski pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of  Monroe County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Monroe County
    105 College Street
    Madisonville, Tn  37354

## THE CIRCUIT COURT FOR MONROE COUNTY, TENNESSEE
## AT MADISONVILLE

| | |
|---|---|
| LARRY MARKOWSKI , and<br>VALERIE MARKOWSKI | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) CIVIL ACTION<br>NO.: $VU7073H$ |
| v. | )<br>) (JURY DEMANDED) |
| ALLSTATE PROPERTY and CASUALTY<br>INSURANCE COMPANY | )<br>)<br>) |
| Defendant. | )<br>) |

### SUMMONS

You are hereby summoned and required to serve upon Jay E. Kohlbusch, Plaintiff's attorney, whose address is 234 South Peters Road, Building A, Suite 101, Knoxville, Tennessee 37923, a true copy of the Answer to the complaint which is herewith served upon you, within thirty (30) days after service of this summons upon you, exclusive of the day of service. You will file the original pleading with the Court. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Issued this the _6_ day of _March_, 2007.

Witness, Marty Cook, Clerk of said court, at office in Madisonville, Tennessee.

_Martha Cook_
Clerk

_J Madlin_
Deputy Clerk

### NOTICE

TO THE DEFENDANT:    **Allstate Property and Casualty Insurance Company**

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution of garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these items include the necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. T.C.A. 26-2-114.

## SERVICE INFORMATION

To the process server: Defendant, Allstate Property and Casualty Insurance Company, may be served through the Commissioner of Commerce and Insurance for the State of Tennessee, Nashville, Tennessee.

## RETURNED

I received this summons on the ___ day of _____, 2007.

I hereby certify and return that on the ___ day of _____, 2007, I:

[  ]  served this summons and a complaint on Defendant, Allstate Property and Casualty Insurance Company in the following manner: _____

_____

_____

[  ]  failed to serve this summons within 30 days after its issuance because:_____

_____

_____

_____
Process Server

## THE CIRCUIT COURT FOR MONROE COUNTY, TENNESSEE
## AT MADISONVILLE

| | |
|---|---|
| LARRY MARKOWSKI , and | ) |
| VALERIE MARKOWSKI | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION |
| v. | ) NO.: *V07073H* |
| | ) (JURY DEMANDED) |
| ALLSTATE PROPERTY and CASUALTY | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendant. | ) |

FILED
TIME_ *9:36* AM/PM
MAR 6 2007 *may*
MARTHA M. COOK
CIRCUIT COURT CLERK

### COMPLAINT

Comes the plaintiffs, by counsel, and for their cause of action states as follows:

1.      Plaintiffs are, and during all material times mentioned herein, the Plaintiffs were citizens and residents of Monroe County, Tennessee.

2.      The Plaintiffs believe and therefore aver that during all material times herein, Defendant Allstate Property and Casualty Insurance Company (hereinafter referred to as "Allstate") was a corporation duly authorized and licensed to do business in the state of Tennessee.

Defendant Allstate can be served with process through the Commissioner of Commerce and Insurance by out-of-county process through the Davidson County Sheriff's Department.

3.      On or about December of 2005, Plaintiffs Larry Markowski and Valarie Markowski, purchased a home on Ft. Loudon Lake in Vonore, Tennessee bearing the property address of 121 Hardin Cemetery Road, Vonore, Tennessee 37885. Larry Markowski financed the purchase of this home pursuant to a note and deed of trust with either Atlantic Mortgage in Athens or New Century Mortgage Company. However the loan was thereafter sold to Home Ec., which, on information and belief, is a servicing company for Morgan Stanley. Prior to the date of the fire, Plaintiff Larry

Markowski had entered into an insurance contract with defendant Allstate to provide property insurance coverage on the property in question, with the policy limits determined by Allstate, through its agents and/or employees and/or representatives in the amount of $144,000.00 for the structure or dwelling, personal property protection not to exceed $86,400.00, in addition to other coverages referenced in the Allstate Property and Casualty Insurance Company Homeowners Policy bearing policy number 9 35 679128 and which is attached hereto and incorporated by reference herein as Exhibit 1 to this Complaint. The Plaintiffs were current on their premiums to the date of the fire referenced below.

4.      On or about March 19, 2006, fire of unknown origin occurred in the insured dwelling in question that resulted in a total loss to the building and personal property of the Plaintiffs housed therein.

5.      After the above-reference fire loss, the Plaintiffs fully cooperated with Allstate's representatives, fulfilled all conditions precedent for payment of their loss pursuant to the property insurance policy referenced above and have otherwise satisfied all conditions precedent to recovery under the policy in question.   However, Defendant Allstate has refused to fully comply with all terms of the policy in question referenced as Exhibit 1 by refusing to pay the Plaintiff's loss in violation and breach of the insurance agreement.    On September 26, 2006 the Plaintiffs were sent a denial letter claiming that the fire in question had been intentionally caused by the Markowskis or by another person acting on their behalf, and therefore, such intentional destruction of the property voided all coverage under the policy.    A copy of the September 26, 2006 letter of Staff Claim Service Adjustor, Sandra Hendrick is attached hereto and incorporated by reference herein as Exhibit 2.   Although the denial letter makes certain general conclusory allegations, defendant Allstate has failed or refused to provide any specific information as to how it arrived at the conclusion that the

2

Plaintiffs insured had any involvement whatsoever in the cause of the fire in question, and the Plaintiffs deny any such involvement.

6. During all material times herein, defendant Allstate knew that the Plaintiffs claim was wholly valid and should be paid, but instead o f honoring the terms of the insurance agreement in question, Allstate has wrongfully and in breach of the implied covenant of good faith and fair dealing withheld and denied monies and benefits rightfully and contractually due to the Plaintiffs. In ignoring the Plaintiffs claim and in expressly denying their claim for monies and benefits pursuant to protection afforded by the insurance policy in question, defendant Allstate has acted wrongfully and unreasonably in the following respects, among others:

> a. Defendant Allstate has failed/or refused to make a timely and adequate investigation or any proper investigation other than the attempt to deny coverage.
>
> b. Defendant Allstate has refused and continues to refuse to give any reasonable interpretation to the provisions of the policy insurance or reasonable application of such provisions to the Plaintiffs claim and has acted to protect its own financial interest therein at the expense of the Plaintiffs rights.
>
> c. Defendant Allstate's refusal to pay monies due to the Plaintiffs under the policy in question has compelled the Plaintiffs to engage legal counsel and to initiate litigation and attendant costs to recover such benefits.
>
> d. As a direct and proximate cause and result of the conduct of defendant Allstate, the Plaintiffs have sustained substantial compensable losses, including monies withheld by Allstate pursuant to the policy in question, economic losses, such as attorneys fees, loss of credit and, the loss of use of certain personal property. Further, defendant

3

Allstate's actions have caused the Plaintiffs to suffer embarrassment and humiliation and severe mental and emotional distress and discomfort.

e. Defendant Allstate has failed to pay the mortgagee, or loss payee, Home Ec., in violation of the insurance contract that is the subject of this case, which has not only caused the Plaintiffs herein to incur damage to their credit rating, but also, such delays and failure to follow full and prompt claims procedures constitutes deceptive trade practices in violation of the T.C.A. §47-18-104(b)(27), which also entitles the Plaintiffs herein to pursue a private right of action pursuant to T.C.A §47-18-109 in addition to this action in breach of the insurance contract in question.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs pray as follows:

1. That proper issue and be served upon the Defendant herein and the Defendant be required to answer this Complaint within the time required by law, but not under oath, its oath being waived;

2. That a jury be empaneled to fairly try the issues in this case and that this Court enter a Judgment against the defendant, Allstate, for their contractual damages of full face value of coverage as set forth in the policy herein of $144,000.00 for the total destruction of the Plaintiffs dwelling, $86,000.00 for the destruction of the Plaintiffs personal property destroyed in the fire in question, and any and all other contractual amounts to which the Plaintiffs are entitled for their losses, including the loss of use and removal of debris pursuant to the policy in question;

3. In addition to the Plaintiff's claim for breach of the insurance contract against Defendant Allstate, Plaintiffs further pray that they be awarded a Judgment against the defendant herein for Allstate's deceptive practices in failing to promptly pay the loss payee and/or mortgagee, Home Ec., because of unreasonably delaying the payment of the note to the mortgagee due to the

4

total destruction of the house in question pursuant to T.C.A.§47-18-104(27) and §47-18-109.

Plaintiffs pray that said Judgment for these deceptive trade practices should be for treble damages,

or three times the contractual amount awarded in addition to their reasonable attorneys fee incurred

in the prosecution of this action pursuant to the application of T.C.A. §47-18-109, together with

their costs and disbursement;

4.     That the Plaintiffs be awarded Judgment for any other such further and general relief

as the jury and the Court deems just and equitable under the law and evidence presented in this case.

Respectfully submitted this 2nd day of March , 2007.


                         LARRY MARKOWSKI , and
                         VALARIE MAROWSKI


                         JAY E. KOHLBUSCH BPR# 12690
                         Attorney for Plaintiff
                         234 South Peters Road
                         Building A, Suite 101
                         Knoxville, TN 37923
                         Ph: 865-862-0284
                         Fax: 865-862-0285


                         Randy George Rogers, BPR# 005630  w/ permission
                         Attorney for the Plaintiff
                         105 N. White Street
                         P. O. Box 507
                         Athens, TN 37303-0507
                         PH: 423-745-5674
                         FAX: 423-745-5679

5

## COST BOND

We acknowledge ourselves as surety for all costs, taxes and damages in this case in

accordance with T.C.A. Section 20-12-120.

LARRY MARKOWSKI , and
VALARIE MAROWSKI

Principal
517 Sunset Drive
Madisonville, TN 37354

SURETY
JAY E. KOHLBUSCH BPR# 12690
234 South Peters Road
Building A, Suite 101
Knoxville, TN 37923
Ph: 865-862-0284
Fax: 865-862-0285

SURETY
Randy George Rogers, BPR# 005630
Attorney for the Plaintiff
105 N. White Street
P. O. Box 507
Athens, TN 37303-0507



# Allstate Property and Casualty Insurance Company Homeowners Policy

**TENNESSEE**

**Policy:** 9 35 679128 12/16

**Issued to:**
Larry Markowski
PO Bx 152
Vonore TN 37885-0152

**Effective:** December 16, 2005

**By your Allstate agent:**
Dennis Powers Agy
6906 Kingston Pk#102
Knoxville TN 37919



**Allstate Property and Casualty Insurance Company**
**The Company Named in the Policy Declarations**
**A Stock Company—Home Office: Northbrook, Illinois 60062**

PROP *11000410512235/001172509*
APC220

## Table of Contents

Agreements We Make With You..................2

### General

Definitions Used In This Policy.....................2
Insuring Agreement ......................................4
Conformity To State Statutes.......................4
Coverage Changes.......................................4
Policy Transfer.............................................4
Continued Coverage After Your Death .........4
Cancellation ................................................4
Misrepresentation, Fraud or Concealment...5
What Law Will Apply ....................................5
Where Lawsuits May Be Brought.................5
Action Against Us.........................................6
Arbitration...................................................6

### Section I—Your Property

#### Coverage A
##### Dwelling Protection
Property We Cover Under Coverage A..........6
Property We Do Not Cover Under
Coverage A ..................................................6

#### Coverage B
##### Other Structures Protection
Property We Cover Under Coverage B..........6
Property We Do Not Cover Under
Coverage B ..................................................7

##### Losses We Cover Under
Coverages A and B .......................................7

#### Coverage C
##### Personal Property Protection
Property We Cover Under Coverage C..........7
Limitations On Certain Personal Property ....7
Property We Do Not Cover Under
Coverage C ..................................................8
Losses We Cover Under Coverage C ............8

#### Additional Protection
Additional Living Expense ...........................10
Credit Card, Debit Card or Automated Teller
Machine Card, Bank Fund Transfer Card,
Check Forgery and Counterfeit Money........10
Debris Removal...........................................11
Emergency Removal Of Property ................11

Fire Department Charges ............................11
Temporary Repairs After A Loss .................11
Trees, Shrubs, Plants and Lawns ...............12
Temperature Change ...................................12
Power Interruption .....................................12
Arson Reward..............................................12
Collapse .....................................................12
Land ..........................................................13
Lock Replacement.......................................13

##### Losses We Do Not Cover Under Coverage A,
Coverage B and Coverage C..........................13

### Section I Conditions

Deductible ..................................................16
Insurable Interest and Our Liability .............16
What You Must Do After A Loss...................16
Our Settlement Options ...............................17
How We Pay For A Loss...............................17
Our Settlement Of Loss ...............................19
Appraisal ....................................................19
Abandoned Property....................................20
Permission Granted To You .........................20
Our Rights To Recover Payment...................20
Our Rights To Obtain Salvage .....................20
Action Against Us........................................20
Loss To A Pair Or Set..................................20
Glass Replacement......................................20
No Benefit To Bailee ...................................20
Other Insurance..........................................20
Property Insurance Adjustment...................20
Mortgagee...................................................21
Mold, Fungus, Wet Rot and Dry Rot
Remediation as a Direct Result of a Covered
Water Loss..................................................21

### Section II—Family Liability and
Guest Medical Protection

#### Coverage X
##### Family Liability Protection
Losses We Cover Under Coverage X............22

#### Coverage Y
##### Guest Medical Protection
Losses We Cover Under Coverage Y............22

#### Additional Protection
Claim Expense ............................................22
Emergency First Aid ....................................22

Case 3:07-cv-00104 Document 1-1 Filed 03/22/07 Page 12 of 51 PageID #: <pageID>



Damage To Property Of Others ...................23

**Losses We Do Not Cover Under Coverage X and Coverage Y** ......................................................23

**Section II Conditions**
What You Must Do After An
Accidental Loss.............................................25
What An Injured Person Must Do —
Coverage Y — Guest Medical Protection .......26
Our Payment of Loss — Coverage Y —
Guest Medical Protection.............................26
Our Limits Of Liability .................................26
Bankruptcy ...................................................26
Our Rights To Recover Payment —
Coverage X — Family Liability Protection......26
Action Against Us.........................................26
Other Insurance — Coverage X —
Family Liability Protection............................27

**Section III — Optional Protection**

**Optional Coverages You May Buy**
Coverage BC
Building Codes ..........................................27
Coverage BP
Increased Coverage On Business
Property.....................................................27
Coverage DP
Increased Coverage On Electronic
Data Processing Equipment .....................27
Coverage F
Fire Department Charges .........................27
Coverage G
Loss Assessments....................................27
Coverage J
Extended Coverage On Jewelry, Watches
and Furs ...................................................28
Coverage K
Incidental Office, Private School Or
Studio........................................................28
Coverage M
Increased Coverage On Money.................29
Coverage P
Business Pursuits.....................................29
Coverage S
Increased Coverage On Securities............29
Coverage SD
Satellite Dish Antennas ............................29
Coverage ST
Increased Coverage On Theft Of
Silverware .................................................29

## Agreements We Make With You

**We** make the following agreements with **you**:

### General

#### Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury** —means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) Herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**.

2. **Building structure** —means a structure with walls and a roof.

3. **Business** —means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

   However, the mutual exchange of home day care services is not considered a **business**;

PROP *11000410512235700117 2510*


Case 3:07-cv-00104 Document 1-1 Filed 03/22/07 Page 13 of 51 PageID #: <pageID>

b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
   1) it is rented occasionally for residential purposes;
   2) a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time; or
   3) a portion is rented as a private garage.

4. **Dwelling** — means the single family **building structure** identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

5. **Insured person(s)** — means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any person under the age of 21 in **your** care.

   Under **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection**, **insured person** also means:
   a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner;
   b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

6. **Insured premises** — means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds

**you** acquire for **your** use as a private residence while this policy is in effect;
   2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
   3) cemetery plots or burial vaults owned by an **insured person**;
   4) land owned by or rented to an **insured person** where a single family dwelling is being built as that person's residence;
   5) any premises used by an **insured person** in connection with the **residence premises**;
   6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

7. **Occurrence** — means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

8. **Property damage** — means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

9. **Remediation** — means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection** or **Coverage C — Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

10. **Residence employee** — means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes

Page 3



similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

11. **Residence premises** —means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

12. **We**, **us** or **our** —means the company named on the Policy Declarations.

13. **You** or **your** —means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is

located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **we** broaden coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the premium period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

## Policy Transfer

**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death

If **you** die, coverage will continue until the end of the premium period for:
1) **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.
2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Cancellation

**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy

Page 4



Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

## Misrepresentation, Fraud or Concealment
**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## What Law Will Apply
This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.



Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

## Action Against Us

No one may bring an action against us unless there has been full compliance with all policy terms.

Any action against **us** to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within one year of the date the cause of action accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

## Arbitration

Any claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by arbitration only upon mutual consent of the parties. Arbitration pursuant to this provision shall be subject to the following:

a) no arbitrator shall have the authority to award punitive damages or attorney's fees;

b) neither of the parties shall be entitled to arbitrate any claims or disputes in a representative capacity or as a member of a class; and

c) no arbitrator shall have the authority, without the mutual consent of the parties, to consolidate claims or disputes in arbitration.

# Section I – Your Property

## Coverage A
## Dwelling Protection

### Property We Cover Under Coverage A:

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

### Property We Do Not Cover Under Coverage A:

1. Any structure including fences or other property covered under **Coverage B – Other Structures Protection**.

2. Land.

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## Coverage B
## Other Structures Protection

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures connected to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling**.

**Page 6**



4. Wall-to-wall carpeting fastened to **building structures** on the **residence premises** other than **your dwelling**.

## Property We Do Not Cover Under Coverage B:
1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Coverage A—Dwelling Protection**.

3. Land.

4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to **building structures**.

## Losses We Cover Under Coverages A and B:
**We** will cover sudden and accidental direct physical loss to property described in **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection** except as limited or excluded in this policy.

## Coverage C
## Personal Property Protection

### Property We Cover Under Coverage C:
1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Coverage C—Personal Property Protection**.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:
Limitations apply to the following groups of personal property. If personal property can reasonably be

considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage C—Personal Property Protection**. The total amount of coverage for each group in any one loss is as follows:

1. $50 — Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards and smart cards.

2. $200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $250 — Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing equipment or in a **business**. Recording or storage media includes, but is not limited to:
   a) tapes;
   b) CDs, DVDs and other discs;
   c) records;
   d) disks;
   e) reels;
   f) cassettes;
   g) cartridges; or
   h) programs.

4. $500 — Theft of tools and their accessories.

5. $1,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware and furs, including any item containing fur which represents its principal value.

6. $1,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not



include electronic data processing equipment or the recording or storage media used with that equipment.

7. $1,000 — Trading cards, subject to a maximum amount of $250 per card.

8. $1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

9. $1,000 — Manuscripts, including documents stored on electronic media.

10. $1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

11. $1,000 — Trailers not used with watercraft.

12. $1,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

13. $1,500 — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
   a) the retail value of the media, if pre-programmed; or
   b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $2,000 — Theft of firearms, their related equipment, and accessories.

15. $2,500 — Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled.

16. $2,500 — Theft of goldware, silverware, pewterware and platinumware.

## *Property We Do Not Cover Under Coverage C:*

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled or used solely for the service of the **insured premises** and not licensed for use on public roads subject to **Limitations On Certain Personal Property**, item 15.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, or tenants not related to **you**.

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Satellite dish antennas and their systems.

## *Losses We Cover Under Coverage C:*

**We** will cover sudden and accidental direct physical loss to the property described in **Coverage C — Personal Property Protection**, except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   **We** do not cover:
   a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind

Page 8



Case 3:07-cv-00104  Document 1-1  Filed 03/22/07  Page 19 of 51  PageID #: <pageID>

forces rain, snow, sleet, sand or dust
through the damaged roof or wall;
b) loss to watercraft and their trailers,
furnishings, equipment and motors unless
inside a fully enclosed **building structure**.
However, **we** do cover canoes and
rowboats on the **residence premises**.

3. Explosion.

4. Riot or Civil Commotion, including pillage and
looting during, and at the site of, the riot or
civil commotion.

5. Aircraft, including self-propelled missiles and
spacecraft.

6. Vehicles.

7. Smoke.

   **We** do not cover loss caused by smoke from
   the manufacturing of controlled substances,
   agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   **We** do not cover vandalism or malicious
   mischief if **your dwelling** has been vacant or
   unoccupied for more than 30 consecutive days
   immediately prior to the vandalism or
   malicious mischief. A **dwelling** under
   construction is not considered vacant or
   unoccupied.

9. Falling objects.

   **We** do not cover loss to personal property
   inside a **building structure** unless the falling
   object first damages the exterior walls or roof
   of the **building structure**.

10. Weight of ice, snow or sleet which causes
    damage to personal property in a **building
    structure**, but only if the **building structure** is
    damaged due to the weight of ice, snow or
    sleet.

11. Increase or decrease of artificially generated
    electrical current to electronics, electrical
    appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a
    steam or hot water heating system, an air
    conditioning system, an automatic fire
    protection system or an appliance for heating
    water.

13. Water or steam that escapes from a plumbing,
    heating or air conditioning system, an
    automatic fire protection system, or from a
    household appliance due to accidental
    discharge or overflow.

    **We** do not cover loss to the system or
    appliance from which the water or steam
    escapes, or loss from water which backs up
    through sewers or drains or overflows from a
    sump pump, sump pump well or other system
    designed for the removal of subsurface water
    which is drained from a foundation area of a
    structure.

14. Freezing of a plumbing, heating or air
    conditioning system or a household appliance.

    **We** do not cover loss at the **residence
    premises** under perils 12), 13), and 14) caused
    by or resulting from freezing while the
    **building structure** is vacant, unoccupied or
    under construction unless **you** have used
    reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the
       water from the systems and appliances.

15. Theft, or attempted theft, including
    disappearance of property from a known place
    when it is likely that a theft has occurred. Any
    theft must be promptly reported to the police.

    **We** do not cover:
    a) theft or attempted theft committed by an
       **insured person**;
    b) theft in or from the **residence premises**
       while under construction or of materials
       and supplies for use in construction, until
       the **dwelling** is completed and occupied;

Page 9



c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;

d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;

e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## *Additional Protection*

1. **Additional Living Expense**

a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Coverage A—Dwelling Protection, Coverage B —Other Structures Protection** or **Coverage C —Personal Property Protection** makes **your** **residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

Payment for additional living expense as a result of a covered loss under **Coverage A —Dwelling Protection, Coverage B — Other Structures Protection** or **Coverage C —Personal Property Protection** will be limited to the least of the following:

1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or

2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or

3) 12 months.

Additional Living Expense will not exceed the amount indicated on **your** Policy Declarations.

b) **We** will pay the reasonable and necessary increase in living expenses for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a loss **we** insure against. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions —Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

These periods of time are not limited by the termination of this policy.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Credit Card, Debit Card or Automated Teller Machine Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money** **We** will pay for loss:

a) that an **insured person** is legally required to pay for the unauthorized use of any
1) credit card;
2) debit or automated teller machine card;
3) bank fund transfer card;
4) code;
5) account number;
6) personal identification number; or
7) other means of account access

that can be used, alone or in conjunction with items 1) through 7) above, to obtain money, goods, services, or any other thing

Page 10



of value, or that can be used to initiate a transfer of funds.

b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;

c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

**Our** maximum limit of liability for any one loss is $1,000, regardless of the number of persons involved. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

**We** do not cover:

a) loss arising from any **business** of an **insured person**;

b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card, debit or automated teller machine card, or bank fund transfer card;

c) loss arising out of dishonesty of an **insured person**.

When loss is discovered, the **insured person** must give **us** immediate notice. If the loss involves a credit card, debit or automated teller machine card, or bank fund transfer card, the **insured person** must also give immediate notice to the company or bank that issued the card. Failure to comply with the terms and conditions of the card voids this protection.

**We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

When this coverage applies, **we** will defend any suit brought against an **insured person** for the enforcement of payment that an **insured person** is legally required to make as a result

of the unauthorized use of any credit card, debit or automated teller machine card, or bank fund transfer card issued to or registered in the name of an **insured person**. The defense will be at **our** expense, with counsel of **our** choice.

When this coverage applies, **we** have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment legally required to be made as a result of forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   **We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase

Page 11



the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
**We** will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Coverage A – Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises. We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Coverage A – Dwelling Protection** or **Coverage B – Other Structures Protection.**

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

This coverage does not increase the limit of liability applying to the damaged property.

8. **Temperature Change**
**We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure.**

This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
**We** will pay up to $500 for loss to the contents of freezers and refrigerated units on the

residence premises caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11. **Collapse**
**We** will cover at the **residence premises**:
a) the entire collapse of a covered **building structure**;
b) the entire collapse of part of a covered **building structure**; and
c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I, Coverage C – Personal Property Protection**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof;
d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse as referenced herein means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and

Page 12

Case 3:07-cv-00104 Document 1-1 Filed 03/22/07 Page 23 of 51 PageID #: <pageID>

instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a sudden and accidental direct physical loss caused by one or more of the following:

a) a loss **we** cover under **Section I, Coverage C —Personal Property Protection;**

b) weight of persons, animals, equipment or contents; weight of rain, snow or ice which collects on a roof;

c) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

12. **Land**

If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to \$10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I—Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

13. **Lock Replacement**

When a key to a lock is stolen as part of a covered theft loss, **we** will pay under **Coverage A —Dwelling Protection** the reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. The limit of liability under this coverage following any one theft loss is \$500.

This coverage does not increase the limit of liability that applies to the covered property.

## Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C

A. **We** do not cover loss to the property described in **Coverage A —Dwelling Protection** or **Coverage B —Other Structures Protection** consisting of or caused by the following:

1. Freezing of:
   a) plumbing, fire protective sprinkler systems, heating or air conditioning systems;
   b) household appliances; or
   c) swimming pools, hot tubs and spas within the **dwelling**, their filtration and circulation systems;

   or discharge, leakage or overflow from within a), b) or c) above, caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
   a) maintain heat in the **building structure;** or
   b) shut off the water supply and drain the system and appliances.

2. Freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not. This exclusion applies to fences, pavements, patios, foundations, retaining walls, bulkheads, piers, wharves and docks. This exclusion also applies to swimming pools, hot tubs, spas, their filtration and circulation systems if the swimming pool, hot tub or spa is not located within a heated portion of the **dwelling**.



3. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
   a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
   b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

4. Collapse, except as specifically provided in **Section I—Additional Protection** under item 11, "Collapse."

5. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

6. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

7. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
   b) mechanical breakdown;
   c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
   d) rust or other corrosion;
   e) contamination, including, but not limited to, the presence of toxic, noxious or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
   f) smog, smoke from the manufacturing of any controlled substance,

agricultural smudging and industrial operations;
   g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
   h) insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or
   i) seizure by government authority.

If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling, we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

8. Soil conditions, including, but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

B. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection** when:
   1) there are two or more causes of loss to the covered property; and
   2) the predominant cause(s) of loss is (are) excluded under items A.1 through A.8 above.

C. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** consisting of or caused by the following:

Page 14



1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that:
   a) backs up through sewers or drains; or
   b) overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

3. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 3 listed above.

4. Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

5. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**.

**We** do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

6. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

7. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

8. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of, a crime.

9. Weather Conditions that contribute in any way with a cause of loss excluded under **Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C** to produce a loss.

10. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

    of property whether on or off the **residence premises** by any person or organization.

Page 15



11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

D. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** when:
   1) there are two or more causes of loss to the covered property; and
   2) the predominant cause(s) of loss is (are) excluded under items C.1. through C.11 above.

E. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** consisting of or caused by mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

   This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions—Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

F. **We** do not cover loss to the property described in **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** consisting of or caused by the following. These exclusions apply regardless of whether any other cause contributed concurrently or in any sequence to produce the loss:
   1. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

**We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

   2. War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

## Section I Conditions

1. **Deductible**
   **We** will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
   In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
   In the event of a loss to any property that may be covered by this policy, **you** must:
   a) immediately give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, debit or automated teller machine card, or bank fund transfer card, give notice to the company or bank that issued the card.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
   d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
   e) produce receipts for any increased costs to maintain **your** standard of living while

**Page 16**

PROP `·110004105122357001172517·`

Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 27 of 51   PageID #: <pageID>

**you** reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as **we** reasonably require:
1) show **us** the damaged property.
2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
3) produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power to do so; and

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
1) the date, time, location and cause of loss;
2) the interest **insured persons** and others have in the property, including any encumbrances;
3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
4) any other insurance that may cover the loss;
5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
6) at **our** request, the specifications of any damaged **building structure** or other structure; and
7) evidence supporting any claim under the Credit Card, Debit or Automated Teller Machine Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

4. **Our Settlement Options**
In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
Under **Coverage A—Dwelling Protection**, **Coverage B —Other Structures Protection** and **Coverage C —Personal Property Protection**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
1) the whole amount of loss for property covered under **Coverage A— Dwelling Protection** and **Coverage B —Other Structures Protection**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;
2) the whole amount of loss for property covered under **Coverage C — Personal Property Protection**, without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the damaged,

**Page 17**



destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below, if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions — Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**, and shall not be payable for any losses excluded in **Section I — Your Property**, under **Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C, section E**.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar

use on the same **residence premises**; or
3) the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Coverage C — Personal Property Protection**;
2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or
4) land.

Payment under a), b), or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction,

PROP *11000410512235700117251B*


maintenance, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. Under **Coverage C — Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the Limit Of Liability shown on the Policy Declarations for **Coverage C — Personal Property Protection**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;

4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled.

6. **Our Settlement Of Loss**

**We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

7. **Appraisal**

If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.



8. **Abandoned Property**
   **We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
   a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
   b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
    When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of the loss.

11. **Our Rights To Obtain Salvage**
    **We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

    **We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

    When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Action Against Us**
    No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
    a) there has been full compliance with all policy terms; and
    b) the action is commenced within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
    If there is a covered loss to a pair or set, **we** may:
    a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
    b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
    Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
    This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
    If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
    When the Policy Declarations indicates that the Property Insurance Adjustment Condition applies, **you** agree that, at each policy anniversary, **we** may increase the Limit of Liability shown on the Policy Declarations for **Coverage A—Dwelling Protection** to reflect one of the following:
    a) the rate of change in the Index identified in the "Important Payment and Coverage

Page 20



Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 31 of 51   PageID #: <pageID>

Information* section of the Policy Declarations. The limit of liability for **Coverage A—Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1000; or

b) the minimum amount of insurance coverage **we** are willing to issue for the succeeding premium period under **Coverage A—Dwelling Protection** for **your dwelling** and other property **we** cover under **Coverage A—Dwelling Protection**.

Any adjustment in the limit of liability for **Coverage A—Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B—Other Structures Protection** and **Coverage C—Personal Property Protection** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the limits of liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the limits of liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

18. **Mortgagee**
A covered loss will be payable to the Mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:

a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person,** failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and

b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d) give **us** the mortgagee's right of recovery against any party liable for loss; and
e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

19. **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**
In the event of a covered water loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection, we** will pay up to $5,000 for mold, fungus, wet rot or dry rot **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures**

Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 32 of 51   PageID #: <pageID>



Protection or **Coverage C – Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Coverage A – Dwelling Protection, Coverage B – Other Structures Protection** or **Coverage C – Personal Property Protection**.

## Section II – Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

#### Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to defend any suit or pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Coverage Y
### Guest Medical Protection

#### Losses We Cover Under Coverage Y:
**We** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses,

hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Additional Protection

**We** will pay, in addition to the limits of liability:
1. **Claim Expense**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

Page 22



3. **Damage To Property Of Others**

At **your** request, **we** will pay up to $500 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

**We** will not pay for **property damage**:
a) to property covered under **Section I** of this policy;
b) to property intentionally damaged by an **insured person** who has attained the age of 13;
c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
d) arising out of:
   1) past or present **business** activities;
   2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
   3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

## Losses We Do Not Cover Under Coverage X and Coverage Y

A. **Losses We Do Not Cover Under Coverage X:**
   1. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

   2. **We** do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   3. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting

of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   4. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

   5. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

   6. **We** do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

B. **Losses We Do Not Cover Under Coverage Y:**
   1. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

   2. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

C. **Losses We Do Not Cover Under Coverage X and Coverage Y:**
   Coverage under **Coverage X — Family Liability Protection** will be excluded for **bodily injury** and **property damage** and coverage under **Coverage Y — Guest Medical Protection** will be excluded for **bodily injury** as follows:

   1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or



omissions of, any **insured person**. This exclusion applies even if:

a) such **insured person** lacks the mental capacity to govern his or her conduct;

b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any worker's compensation, non-occupational disability or occupational disease law.

3. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does **not** apply to:

a) a motor vehicle in dead storage or used exclusively on an **insured premises**;

b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is

being used away from an **insured premises**;

c) a motorized wheel chair;

d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

e) a golf cart owned by an **insured person** when used for golfing purposes;

f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g) lawn or garden implements under 40 horsepower;

h) **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a) has inboard or inboard-outboard motor power of more than 50 horsepower;

b) is a sailing vessel 26 feet or more in length;

c) is powered by one or more outboard motors with more than 25 total horsepower;

d) is designated as an airboat, air cushion, or similar type of watercraft; or

e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. This exclusion does not

Page 24



apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This

exclusion does not apply to **bodily injury** to a **residence employee**.

12. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

13. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

## *Section II Conditions*

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage, you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others

Page 25



at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do —Coverage Y—Guest Medical Protection**

   If someone is injured, that person, or someone acting for that person, must do the following:

   a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.

   b) Give **us** written authorization to obtain copies of all medical records and reports.

   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss —Coverage Y—Guest Medical Protection**

   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**

   Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Coverage X— Family Liability Protection** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence. Our** total liability under **Coverage Y—Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

5. **Bankruptcy**

   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights to Recover Payment —Coverage X —Family Liability Protection**

   When **we** pay any loss, an **insured person's** right to recover from anyone else becomes

ours up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**

   a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.

   b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage X—Family Liability Protection**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within one year of such judgment or agreement.

   c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Coverage Y—Guest Medical Protection**, unless such action is commenced within one year after the date the expenses for which coverage is sought were actually incurred.

   d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II—Additional Protection**, unless such action is commenced within one year after the date the claim expenses or emergency first aid expenses for which coverage is sought were actually incurred, or within one year after the date of loss to the property if coverage is being sought under the **Damage to Property of Others** provision.

   e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

Page 26



Case 3:07-cv-00104  Document 1-1  Filed 03/22/07  Page 37 of 51  PageID #: <pageID>

8. **Other Insurance—Coverage X—Family Liability Protection**

This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

# *Section III— Optional Protection*

## *Optional Coverages You May Buy*

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BC**
   **Building Codes**

   **We** will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A—Dwelling Protection** to comply with local building codes after a covered loss to the **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

2. **Coverage BP**
   **Increased Coverage On Business Property**

   The limitation on **business** property located on the **residence premises**, under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

3. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**

   The limitation on electronic data processing equipment under **Coverage C —Personal Property Protection**, and the recording or storage media used with that equipment, is

increased to the amount shown on the Policy Declarations.

4. **Coverage F**
   **Fire Department Charges**

   The \$500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

5. **Coverage G**
   **Loss Assessments**

   If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

   **We** will pay **your** share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:
   a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
   b) **bodily injury** or **property damage** covered under **Section II** of this policy.

   Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

   **We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds \$250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

Page 27



In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

6. **Coverage J**
**Extended Coverage On Jewelry, Watches and Furs**
**Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C — Personal Property Protection**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

**We** do not cover loss caused by or consisting of:
a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   1) may be reasonably expected to result from such acts; or
   2) is the intended result of such acts.
b) wear and tear, gradual deterioration, inherent vice, insects or vermin;
c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke. **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
d) war or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

e) failure by any **insured person** to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

Any deductible shown on the Policy Declarations applicable to **Coverage C — Personal Property Protection**, also applies to a loss under this coverage.

7. **Coverage K**
**Incidental Office, Private School Or Studio**
a) The limits applying to property used or intended for use in a **business** under **Coverage C — Personal Property Protection** do not apply to equipment, supplies and furnishings used in a described office, private school or studio **at your residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. These limits are not in addition to **Coverage C — Personal Property Protection, Limitations On Certain Personal Property** on property used or intended for use in a **business**. The increased coverage does not include property held for sample, sale or delivery after sale.

b) **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

We do not cover **bodily injury** to:
a) any employee other than a **residence employee**; or

Page 28



Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 39 of 51   PageID #: <pageID>

b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

8. **Coverage M**

**Increased Coverage On Money**
The limitation on money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards and smart cards under **Coverage C —Personal Property Protection** is increased to the amount shown on the Policy Declarations.

9. **Coverage P**

**Business Pursuits**
**Coverage X —Family Liability Protection** and **Coverage Y —Guest Medical Protection** are extended to cover specified **business** pursuits of an **insured person**.

**We** do not cover:
a) **bodily injury** or **property damage** arising out of the **business** pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;
b) **bodily injury** or **property damage** arising out of the rendering of or failure to render a professional service of any nature, other than teaching;
c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with

saddle animals, motorized land vehicles, hovercrafts, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

10. **Coverage S**

**Increased Coverage On Securities**
The \$1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property, covered under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations.

11. **Coverage SD**

**Satellite Dish Antennas**
**Coverage C —Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Coverage C —Personal Property Protection**.

The amount of coverage is shown on the Policy Declarations.

12. **Coverage ST**

**Increased Coverage On Theft Of Silverware**
The limitation on theft of goldware, silverware, pewterware and platinumware under **Coverage C —Personal Property Protection** is increased to the amount shown on the Policy Declarations.

Page 29

## Allstate Property and Casualty Insurance Company



Policy Number: **9 35 679128 12/16**   Your Agent:   **Dennis Powers Agy (865) 588-8585**
For Premium Period Beginning: **Dec. 16, 2005**

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy – Keep It With Your Policy*

## Tennessee Amendatory Endorsement
## Homeowners Policy – APC246

I.   In the **General** section, the following changes are made:

A.   The **Cancellation** provision is replaced by the following:

**Cancellation**
**Your** right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**We** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and is not a renewal with **us**, **we** may cancel this policy for any reason by mailing **you** at least 10 days notice before the cancellation takes effect.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1)   non-payment of premium;

2)   the policy was obtained by misrepresentation, fraud or concealment of material facts;

3)   material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; or

4)   there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will mail **you** at least 10 days notice. If the cancellation is for any other reason, **we** will mail **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**We** have the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to renew or continue the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice of non-renewal to **you** will be deemed proof of notice.

**Page 1**

PROP *11000410512235/0011/2524*



Case 3:07-cv-00104  Document 1-1  Filed 03/22/07  Page 41 of 51  PageID #: <pageID>

# Allstate Property and Casualty Insurance Company

Policy Number: 9 35 679128 12/16    Your Agent:    Dennis Powers Agy (865) 588-8585
For Premium Period Beginning: Dec. 16, 2005

Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

B.  The following provisions are added:

### Conditional Reinstatement
If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **we** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

### Charge for Insufficient Funds
If at any time, **your** payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account, **you** will be charged a fee.

II.  In **Section I—Your Property**, under the **Losses We Do Not Cover Under Coverage A, Coverage B and Coverage C**, item A.4 is replaced by the following:

4.  Collapse of a building or any part of a building except as specifically provided in **Section I—Additional Protection under Collapse and Sinkhole Collapse**.

III.  The following is added under **Section I—Your Property, Additional Protection**:

14.  **Sinkhole Collapse**
     **We** will cover direct loss to property insured under **Dwelling Protection, Other Structures Protection** and **Personal Property Protection** when loss is caused by sinkhole collapse. Sinkhole collapse means sudden settlement or collapse of earth supporting the covered property when such settlement or collapse results from subterranean voids created by action of water on limestone or similar rock formations.

     This coverage does not change the limit of liability that applies to the covered property.

IV.  In **Section I Conditions**, the Mortgagee provision is replaced by the following:

18.  **Mortgagee**
     A covered loss will be payable to the Mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

     **We** will:
     a)  protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
     b)  give the mortgagee at least 10 days notice if **we** cancel or non-renew this policy.

     The mortgagee will:
     a)  furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;

Page 2

# Allstate Property and Casualty Insurance Company

Policy Number: 9 35 679128 12/16     Your Agent:     Dennis Powers Agy (865) 588-8585
For Premium Period Beginning: Dec. 16, 2005

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy—Keep It With Your Policy*

## Building Structure Reimbursement
## Extended Limits Endorsement — APC198

For an additional premium and when the Policy Declarations indicates that the "**Building Structure Reimbursement Extended Limits Endorsement**" applies, the following amendment is made to condition 5 (titled "**How We Pay For A Loss**") in **Section I Conditions**:

In provision c) (titled "Building Structure Reimbursement."), item 3) of the second paragraph is replaced by the following:

3)   120% of the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A - Dwelling Protection** or **Coverage B - Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

This endorsement applies only if, at the time of a covered loss, **you** have met the following conditions:

1)   **You** insure **your dwelling**, attached structures and detached **building structures** to 100% of replacement cost as determined by **our** estimate completed and based on the accuracy of information **you** furnished;

2)   **You** have accepted the Property Insurance Adjustment Condition, agree to accept each annual adjustment in the **Coverage A - Dwelling Protection** limit of liability, and pay any additional premium charged; and

3)   **You** notify **us** within 60 days of the start of any modifications that increase the aggregate value of **your dwelling**, attached structures and detached **building structures** at the **residence premises** by $5,000 or more, and pay any resulting additional premium due for the increase in value.

If, at the time of a covered loss, **you** fail to meet any of the conditions in 1), 2) or 3) above, then in **Section I—Conditions**, item 5., **How We Pay For A Loss**, under c), Building Structure Reimbursement, item 3) remains:

3)   the Limit of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A - Dwelling Protection** or **Coverage B - Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

All other policy terms and conditions apply.

# Allstate Property and Casualty Insurance Company

Policy Number: **9 35 679128 12/16**     Your Agent:     **Dennis Powers Agy  (865) 588-8585**
For Premium Period Beginning: **Dec. 16, 2005**

Allstate
You're in good hands

- b) pay upon demand any premium due if an **insured person** fails to do so;
- c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
- d) give **us** the mortgagee's right of recovery against any party liable for loss; and
- e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

All other policy terms and conditions apply.

**Page 3**

PROP *1100041051223b/001172525*



You're in good hands.

*Dennis Powers Agy*
*6906 Kingston Pk#102*
*Knoxville TN 37919*

**Your Quick Insurance Check**

✓ Verify the information listed in the Policy Declarations.

✓ Please call if you have any questions.

✓ Now you can pay your premium before your bill is issued - visit allstate.com or call 1-800-Allstate ᵇ.

Larry Markowski
 PO Bx 152
Vonore TN 37885-0152

**Confirming Your Policy Change**

We've sent along this mailing to verify the changes to your policy that you recently requested. The changes took effect on December 29, 2005. Please look over all the information in this mailing, and call us right away if you have any questions or if anything isn't exactly right.

The accompanying Amended Policy Declarations includes these changes:
An Occupant has been changed.

There is no change in premium for the current premium period.

The coverages and limits you carry for your property, and the costs of those coverages, are listed in detail on the enclosed Amended Policy Declarations. You can see the specific changes to your policy by comparing this Amended Policy Declarations to the Policy Declarations previously mailed to you.

If you have any questions or concerns, please contact me at (865) 588-8585---or call the Allstate Customer Information Center at 1-800-ALLSTATE (1-800-255-7828).

Sincerely,

*Dennis Powers*

Dennis Powers Agy
Your Allstate Agent

PROP *S10004105122853009060301*     0000009356/9128 070    065    TN

Information as of
December 29, 2005

EP29

Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 45 of 51   PageID #: <pageID>

# Allstate Property and Casualty Insurance Company



## AMENDED
# Homeowners
# Policy Declarations

## *Summary*

| | | |
|---|---|---|
| **NAMED INSURED(S)**<br>Larry Markowski<br>PO Bx 152<br>Vonore TN 37885-0152 | **YOUR ALLSTATE AGENT IS:**<br>Dennis Powers Agy<br>6906 Kingston Pk#102<br>Knoxville TN 37919 | **CONTACT YOUR AGENT AT:**<br>(865) 588-8585 |
| **POLICY NUMBER**<br>9 35 679128 12/16 | **POLICY PERIOD**<br>Begins on Dec. 16, 2005<br>at 12:01 A.M. standard time,<br>with no fixed date of expiration | **PREMIUM PERIOD**<br>Dec. 16, 2005 to Dec. 16, 2006<br>at 12:01 A.M. standard time |

**LOCATION OF PROPERTY INSURED**
121 Hardin Cemetary Road, Vonore, TN

**MORTGAGEE**
- NEW CENTURY MORTGAGE CORPORATION ITS SUCCESSORS &/OR ASSIGNS
  P O Box 11052    Orange CA 92856-8152          *Loan # 3230579*

## *Total Premium for the Premium Period*   *(Your bill will be mailed separately)*

| | |
|---|---|
| Premium for Property Insured | $588.60 |
| **TOTAL** | **$588.60** |

*Your policy change(s) are effective as of Dec. 29, 2005*

PROP *510004105122853009060302*



Information as of
December 29, 2005

**Page 1**
TN070AMD

Case 3:07-cv-00104   Document 1-1   Filed 03/22/07   Page 47 of 51   PageID #: <pageID>

# Allstate Property and Casualty Insurance Company



Policy Number: **9 35 679128 12/16**    Your Agent: **Dennis Powers Agy (865) 588-8585**
For Premium Period Beginning: **Dec. 16, 2005**

## Your Policy Documents

Your Homeowners policy consists of this Policy Declarations and the documents listed below. Please keep these together.

- Homeowners Policy form APC220
- Bldg. Struct. Reimb. Ext. Limits End. form APC198
- Tennessee Amendatory End Homeowners form APC246

## Important Payment and Coverage Information

The Property Insurance Adjustment condition applies.

Please note: This is not a request for payment. Any adjustments to your premium will be reflected on your next scheduled bill which will be mailed separately.

In the meantime, if you have any outstanding or unpaid bills, please pay at least the minimum amount due to assure your policy continues in force. If you have any questions, please contact your agent.

IN WITNESS WHEREOF, **Allstate Property and Casualty Insurance Company** has caused this policy to be signed by two of its officers at Northbrook, Illinois, and if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate Property and Casualty Insurance Company.**

Richard I. Cohen
President

Robert W. Pike
Secretary

*received after taking sworn statements*

Mid America Nashville
Market Claim Office
**Allstate Insurance Company**
555 Marriott Drive, Suite 850
Nashville, TN 37214
Bus: (800) 829-0414

**Allstate.**
You're in good hands.

September 26, 2006

VIA REGULAR U. S. MAIL
& CERTIFIED MAIL RRR #_7006 0810 0003 4916 8715

Larry and Valerie Markowski
P.O. Box 572
Vonore, TN 37885

Re:      Claim #: 6391571269
Policy#: 935679128
D/L:      3/19/06

Dear Mr. and Mrs. Markowski:

We are advising you that Allstate Property and Casualty Insurance Company is denying the claim
set out by you in your Sworn Statement In Proof of Loss. There is no liability or obligation on
the part of Allstate Property and Casualty Insurance Company under the alleged contract for
claims arising from your alleged loss on or about March 19, 2006. Your claim is being denied for
the following reasons.

It has been determined that the fire was intentionally caused by you or by another person acting
on your behalf. Such intentional destruction of the property voids all coverages under the policy.

Since an insured person procured or intentionally set fire to the premises, there is no
coverage for this loss. Your policy specifically excludes "intentional or criminal acts of an
**insured person**, if the loss that occurs:

a)       may be reasonably expected to result from such acts; or

b)       is the intended result of such acts."

You have breached the provisions of the policy in that you have committed concealment or fraud
relating to the claim. Moreover, no coverage is provided for concealment or fraud under the
terms of the policy. Such acts include, without limitation, submitting to the company your Sworn

Statements in Proof of Loss and Contents Inventory list thereby swearing that the loss did not originate by any act, design or procurement on your part, statements made during the investigation of the loss.

**Concealment Or Fraud**

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

Due to your material misrepresentations made during the investigation of your claim, Allstate hereby exercises its right to cancel your policy. Your policy provides:

**Cancellation**

**Our** Right to Cancel:

**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations...

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

...

3)      material misrepresentation, fraud or concealment of material facts in presenting a claim, or violation of any of the policy terms; ...

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

        Please accept this letter as your notice of cancellation. Your policy will cancel on October 31, 2006 at 12:01 a.m.

Your Sworn Statement in Proof of Loss and the attached inventory are rejected because it includes items not destroyed and improperly includes a claim for an automobile.

Allstate Property and Casualty Insurance Company in denying the claims represented by your
Sworn Statement in Proof of Loss and in rejecting your Sworn Statement In Proof of Loss
expressly reserves all of its rights and defenses under the contract of insurance. No waiver or
estoppel of any kind is intended nor may be inferred.

Sincerely,

Sandra Hendrick

Sandra Hendrick
Staff Claim Service Adjuster